JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Chas. S. Winner, Inc. and Emergency Accessories & Installation, Inc.,

**DEFENDANTS**

Leonard L. Polistina, Richard Direnzo, Day Automotive Resources, INc. and Autoport, Inc.,

**(b)** County of Residence of First Listed Plaintiff   Camden
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Camden
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Littler Mendelson, P.C., Three Parkway, 1601 Cherry Street, Philadelphia, Pa 19102, 267.402.3000

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1   U.S. Government Plaintiff

☐ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government Defendant

☒ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                 and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | **PERSONAL INJURY** ☐ 310 Airplane   ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product   Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability   ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &   Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander   ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'   Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability   Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine   **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product   ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability   ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle   ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability   ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal   Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting   ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment   Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/   **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations   ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare   ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -   ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment   ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities -   ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☒ 1   Original Proceeding

☐ 2   Removed from State Court

☐ 3   Remanded from Appellate Court

☐ 4   Reinstated or Reopened

☐ 5   Transferred from another district (specify)

☐ 6   Multidistrict Litigation

☐ 7   Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 U.S.C. 1030

Brief description of cause:
Unauthorized use of employer's computers

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE                              DOCKET NUMBER

DATE   10/10/06

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

William J. Leahy, Esquire
WL – 8514
Darcy D. Walker, Esquire
DW – 0857
Littler Mendelson, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA  19102
267.402.3000
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CHAS S. WINNER, INC., and | : | CIVIL ACTION |
| EMERGENCY ACCESSORIES & | : | |
| INSTALLATION, INC., | : | |
|      Plaintiffs, | : | |
|      v. | : | No. |
| | : | |
| LEONARD L. POLISTINA, | : | |
| RICHARD DIRENZO, | : | |
| DAY AUTOMOTIVE RESOURCES, INC., | : | **VERIFIED COMPLAINT** |
| and AUTOPORT, INC., | : | |
|      Defendants | : | |
| | : | **JURY TRIAL DEMANDED** |

     Plaintiffs Chas S. Winner, Inc. ("Winner") and Emergency Accessories & Installation,

Inc. ("EAI") (collectively "Winner Ford") bring this Action against Winner's former employees,

Leonard Polistina and Richard DiRenzo, seeking preliminary and permanent injunctive relief and

damages based on their violations of the Federal Computer Fraud and Abuse Act ("CFAA"),

breach of their respective contracts with and duty of loyalty to Winner Ford, misappropriation of

trade secrets and confidential business information, and their tortious interference with Winner

Ford's contractual relations and prospective economic advantage.  Winner Ford also seeks

preliminary and permanent injunctive relief and damages against Day Automotive Resources,

Inc. ("Day") and Autoport, Inc. ("Autoport"), the entities for which Polistina and DiRenzo are

now working, to remedy their violations of CFAA, misappropriation of trade secrets and

confidential business information, and interference with both the contracts that Polistina and

DiRenzo had with Winner Ford and with Winner Ford's contractual and prospective relations

with its existing and prospective customers.  Winner Ford further seeks damages for the

Defendants' unauthorized taking of Winner Ford's computer data in violation of N.J. Stat. Ann.

2A:38A-3.  Winner Ford seeks preliminary and permanent injunctive relief to prevent further

irreparable harm caused by the Defendants, as well as compensatory and punitive damages.

## THE PARTIES

1.       Chas S. Winner, Inc. is a corporation organized and existing since 1946 under the

laws of the State of New Jersey, with headquarters at 250 Haddonfield-Berlin Road, Cherry Hill,

New Jersey, 08034.

2.       EAI is a corporation organized and existing under the laws of the State of New

Jersey, with headquarters at 250 Haddonfield-Berlin Road, Cherry Hill, New Jersey, 08034.

3.       Defendant Leonard L. Polistina is an individual residing at 224 Tilford Road,

Somerdale, New Jersey, 08083.  During his employment with Winner Ford, Polistina held the

position of Vice President, Fleet Sales and managed the company's Fleet Sales Department.

4.       Defendant Richard DiRenzo is an individual residing at 54 Woodmill Drive,

Clementon, New Jersey, 08021.  During his employment with Winner Ford, DiRenzo held the

position of Manager, EAI & Fleet.  DiRenzo was responsible for sales of both fleet vehicles and

Winner Ford's up-fitting services for fleet vehicles through the Fleet Sales Department.

5.       Defendant Day Automotive Resources, Inc. ("Day") is a Pennsylvania

corporation with a place of business at 1600 Golden Mile Highway, Monroeville, Pennsylvania,

15146.  Day does business as Day Automotive Group and Day Fleet.

2

6.     Defendant Autoport, Inc. is a Delaware corporation with a place of business at 203 Pigeon Point Road, New Castle, Delaware, 19720.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this Action pursuant to 28 U.S.C. § 1331 because this Action asserts a claim under the Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030.  This Court has supplemental jurisdiction over Winner Ford's state law claims pursuant to 28 U.S.C. § 1367.

8.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) and (3) because substantial part of the events or omissions giving rise to the claims in this Action occurred in this district, and Defendants Polistina and DiRenzo are residents of this State.

## BACKGROUND

9.     In 1997, Winner Ford created its Fleet Department.  The Fleet Department sells fleet vehicles produced by Ford Motor Company.  Winner Ford sells these vehicles, which include cars, trucks, police vehicles, ambulances, and other emergency vehicles, to governmental entities throughout the region, including purchasers in New Jersey, Pennsylvania, Delaware, New York, and Maryland.  The fleet sales business is highly specialized including only a limited number of competitors within the region.  Through its time, effort, and substantial investment, Winner Ford has established itself as one of the leading suppliers of fleet vehicles throughout the region, and is recognized by Ford Motor Company as one of the top five Ford municipal fleet companies in the country.

10.     In addition to selling vehicles, Winner Ford, through EAI, also provides up-fitting services, installing vehicles with items such as computers, lightbars, and other equipment required for government vehicles.

11.     Winner Ford has expended substantial amounts of time, money, and resources in developing its customers and contacts throughout the region, as well as in developing its bidding strategies and procedures. Winner Ford has achieved, and will continue to maintain, its present competitive advantage by preserving the confidentiality of its trade secret and confidential information including, but not limited to, procedures and strategies used in formulating its bids, pricing and profitability of its products and services, current and future business plans, marketing information, financial data, and customer lists and information.

12.     Winner Ford exercises reasonable efforts to maintain the confidential and trade secret nature of such information. Winner Ford requires its sales personnel, sales managers, managers, and other supervisory personnel to sign agreements containing confidentiality, non-competition, and non-solicitation provisions.

## POLISTINA'S EMPLOYMENT AT WINNER FORD

13.     On January 2, 2002, Winner Ford hired Polistina as General Manager of its Fleet Division. Polistina had no previous experience in the sale of fleet vehicles or up-fitting work. Winner Ford subsequently promoted Polistina to the position of Vice President, Fleet Sales.

14.     Immediately prior to beginning work, on December 31, 2001, Polistina signed a Manager Compensation Plan and Non-Competition/Non-Solicitation/Confidentiality Agreement. The Agreement contains a provision entitled "Non-Solicitation," which provides:

> During your employment by Company and for a one (1) year period following the termination of your employment you shall not directly or indirectly (including by aiding or counseling any other person to) approach or attempt to induce any employee of the Company (1) to leave the employ of the Company, and/or (2) to engage in any business activity in connection with the sale, brokerage, leasing, maintenance or repair of foreign or domestic automobiles, trucks, buses or any other automotive business within thirty (30) miles of Company.

(A copy of the Agreement is attached hereto as Exhibit A.)

4

15.     The agreement also contains a provision entitled "Confidentiality," providing:

> During your employment by Company and for a two (2) year
> period following the termination of your employment you shall not
> disclose to any other person, other than a person to whom
> disclosure is reasonably necessary or appropriate in connection
> with your performance as a Manager of the Company, any
> confidential or proprietary information obtained by you while in
> the employ of the Company, including but not limited to Company
> policies and procedures, customer names or files, prospect records,
> lease report, follow-up lists and/or other sales, lease or
> repair/maintenance records.

(Exhibit A.)

16.     During his employment at Winner Ford, Polistina acquired and had access to all

of Winner Ford's trade secret and confidential and proprietary information in its fleet sales

division. Polistina had complete access to Winner Ford's customer information, cost and pricing

information for products and services, customer contracts, and bidding information and

procedures.

## DIRENZO'S EMPLOYMENT AT WINNER FORD

17.     On January 3, 2000, Winner Ford hired DiRenzo as Manager of EAI. DiRenzo

had no previous experience in the sale of fleet vehicles or up-fitting work. He was subsequently

promoted to Manager, EAI & Fleet.

18.     On August 19, 2002, DiRenzo signed a Manager Compensation Plan and Non-

Competition/Non-Solicitation/Confidentiality Agreement with Winner and EAI. The Agreement

contains a provision entitled "Non-Solicitation" which states:

> During your employment by Company and for one (1) year period
> following the termination of your employment you shall not
> directly or indirectly (including by aiding or counseling any other
> person) to approach or attempt to induce any employee of the
> Company (1) to leave the employ of the Company, and/or engage
> in business activity to include sale, leasing, installation or up-fit of
> any emergency lighting, computers, radios and/or any equipment
> or supplies similar to these installed or provided by the Company;

5

to engage in any business activity in connection with the sale,
leasing, maintenance or repair of foreign or domestic automobiles
or other motor vehicles within the State of New Jersey and the
Commonwealth of Pennsylvania.

(A copy of the Agreement is attached hereto as Exhibit B.)

19.     The Agreement also contains a provision entitled "Confidentiality," which

provides:

> During your employment by Company and for a two (2) year
> period following the termination of your employment you shall not
> disclose to any other person, other than a person to whom
> disclosure is reasonably necessary or appropriate in connection
> with your performance as a Manager of the Company, and [sic]
> confidential or proprietary information obtained by you while in
> the employ of the Company, including but not limited to Company
> policies and procedures, customer names or files, prospect records,
> lease reports, follow-up lists and/or other sales, lease or
> repair/maintenance records.

(Exhibit B.)

20.     On October 13, 2003, DiRenzo signed another Manager Compensation Plan and

Non-Competition/Non-Solicitation/Confidentiality Agreement with Winner Ford.  Like his first

Agreement, this one also contained a "Non-Solicitation" provision stating:

> During your employment by Company and for a one (1) year
> period following the termination of your employment you shall not
> directly or indirectly (including by aiding or counseling any other
> person to) approach or attempt to induce any employee of the
> Company (1) to leave the employ of the Company, and/or (2) to
> engage in any business activity in connection with the sale, leasing,
> maintenance or repair of foreign or domestic automobiles or other
> motor vehicles within thirty (30) miles of Company.

(A copy of the 2003 Agreement is attached hereto as Exhibit C.)

21.     The 2003 Agreement also contains a provision entitled "Confidentiality," which

states:

> During your employment by Company and for a two (2) year
> period following the termination of your employment you shall not

6

> disclose to any other person, other than a person to whom
> disclosure is reasonably necessary or appropriate in connection
> with your performance as a Manager of the Company, any
> confidential or proprietary information obtained by you while in
> the employ of the Company, including but not limited to the
> Company policies and procedures, customer name or files,
> prospect records, lease reports, follow-up lists and/or other sales,
> lease or repair/maintenance records.

(Exhibit C.)

22.     During his employment at Winner Ford, DiRenzo acquired and had access to all of Winner Ford's trade secret and confidential and proprietary information in its fleet sales division.  DiRenzo had complete access to Winner Ford's customer information, cost and pricing information for products and services, customer contracts, and bidding information and procedures.

### POLISTINA AND DIRENZO'S PLAN OF UNFAIR COMPETITION

23.     Upon information and belief, in early 2006, Polistina and DiRenzo developed and orchestrated a plan to use Winner Ford's resources, information, contacts, and business knowledge to divert business from Winner Ford to competitors.  Their scheme involved, among other things, directing Winner Ford's customers to Day and Autoport, and using the information that was disclosed to them as employees of Winner Ford to solicit and prepare bids for services and products sold by Winner Ford.  Polistina and DiRenzo began executing their plan while still employed by, and receiving substantial compensation from, Winner Ford.

24.     On April 6, 2006, Polistina sent an email to Richard Johnson and Randy Baratz of Autoport with a subject of "Business Plan/Marketing Auto Port Police Sales."  The email had a file attachment containing what purported to be a business plan for their scheme to market up-fitting services through Autoport to Winner Ford's own customers, and misappropriating Winner Ford's customer contacts.  In the attachment, Polistina stated:

7

As we have discussed I would be willing to start as a Sub-Contractor with Auto Port and operate a marketing company that would domestically promote and sell police  emergency equipment/installation and sales of this equipment to Police and Emergency Service facilities throughout the DE, MD, NJ, DC and PA market through bidding…I have had discussions with Ford Motor Company, Whelen Engineering and other Ford dealers as well as suppliers that are willing to set up accounts and promote the ongoing support of what will be the largest sales and install department in the Northeast region. . . .

Currently I am operating the Fleet department at Winner Ford in Cherry Hill NJ and have been recognized as the 5th largest Fleet operation in the Nation for the 2004/05 Calendar year.

We have the knowledge of how to market our product.  More importantly we have developed and know who our customers are.

25.    On April 12, 2006, Polistina sent an email to Day's fleet manager, Don Phillips, with a subject of "Business Plan."  Polistina also sent a copy of the email to Day's fleet manager Mike Viscusi at his email address of Hotcopone@aol.com.  In the email, Polistina stated:

Don,

We are ready to make this transition.  Please review the follow [sic] issues and advise of how we can work this out.

Len Polistina 90 to 120 days

Draw $2500 weekly against Sales

Rick DiRenzo

Draw $800 weekly against Sales

We are ready to Bid now and bring in money.

What is the expense of each vehicle and how does the structure work?

How do expenses and upfits work?

How do you quote us on upfitting/labor rate?

How do we bill Day for our upfits?

8

Can we establish areas exclusive for our sales and upfitting
(Eastern area PA)

Warranty pricing?

Bid Bonds?

Rick and I have worked closely to become the 5th largest Fleet
Dealer in the US. Rick alone has sold more than 668 vehicles each
year for the last 3 years. We know this business and have the
contacts to make this successful. Once we agree we can start to do
bids and sales.

In addition we will be marketing our local upfits with the sales of
the vehicles with a company we are starting in DE. We are
expecting to be the East Coasts [sic] largest supplier and upfitter as
well as vehicle sales and leasing.

Thank you,

Len Polistina

26.     DiRenzo using information on upcoming bids that he learned through services to
which Winner Ford subscribed, used the computer issued to him by Winner Ford to contact his
employer's customers and prospective customers not on behalf of Winner Ford, but on behalf of
Day and Autoport. Further, rather than making Winner Ford aware of these bids, DiRenzo and
Polistina hid the bids from Winner Ford and pursued them on behalf of Day and Autoport.

27.     On April 10, 2006, DiRenzo sent an email on the computer issued to him by
Winner Ford to purchasing@fairlawn.org requesting to have bid specifications for trucks
forwarded to his home address.

28.     On April 10, 2006, DiRenzo also sent an email on the computer issued to him by
Winner Ford to vprocure@mtabt.org requesting that bid specifications be forwarded to him at his
home address.

9

29.     Also on April 10, 2006, DiRenzo sent an email from the computer issued to him by Winner Ford to bid.info@phila.gov requesting that bid specifications be forwarded to him at his home address.

30.     In some requests for specifications, DiRenzo, while asking that the specifications be forwarded to his home, clearly identified the entity for which he was seeking the information as Autoport or Day.  For example, on April 12, 2006, DiRenzo sent an email message to rayd@dchal.org requesting that the recipient forward a bid specification for a "2006  Pick-Up" to:

> AutoPort
> 54 Woodmill Drive
> Clementon, NJ  08021

31.     Additionally, on April 12, 2006, DiRenzo sent an email from the computer issued to him by Winner Ford to webmaster@ewingtwp.com requesting that bid specifications for "3 police vehicles" be sent to:

> Day Fleet Sales
> C/O Rick Di Renzo
> 54 Woodmill Drive
> Clementon, NJ  08021

32.     On or about April 13, 2006, Autoport submitted a bid for seven lightbars to Warwick Township, Pennsylvania.  The bid was signed by DiRenzo, who was identified as a "sales associate."

33.     As they prepared to (and in some cases actually did) pursue business on behalf of Day and Autoport, while simultaneously withholding business opportunities from Winner Ford, Polistina and DiRenzo also exchanged emails on Winner Ford computers discussing their plans. For example, on April 16, 2006, DiRenzo sent an email to Polistina with a subject of "Day/Autoport."  In the email, DiRenzo stated:

10

Len:

In order to do the bids I have, I need the following info by Monday afternoon, Tuesday [sic] the latest.

List of stockholders

Bid Bonds to use

NJ Business Registration (attached)

Resolution authorizing you to sign or okay to sign Don Phillips [sic] name

The Ewing bid is due Weds 11 am for three cars w/upfits, need parts quotes, do I sue Jon Hall for now?

\*        \*        \*

I have the list of our Winner driver's.

Attached is a list of current bids and due dates.

Need to know exact expense's [sic] from Day.

\*        \*        \*

As you can see, there is plenty of business out there, we need to win 25-30% of the bids.

The quotes, I can have them order the cars from Winner and we can do the upfits at Autoport, lease's [sic] get paid to us right away.  I have to talk Delran, Stratford and Ventnor into doing this.

34.    In April or May 2006, a Winner Ford customer contacted Polistina to inquire as to

whether Winner Ford could do up-fitting work on an ambulance the customer had acquired.

Polistina asked if the customer could wait to have it done.  Polistina then asked the customer if

he could send the work out of state.  When the customer asked why, Polistina replied that he was

"working on something in Delaware."

11

35.    On May 23, 2006, Polistina, using the computer issued to him by Winner Ford,

sent an email from his assigned email address at Winner Ford to his personal email of

lenp64@aol.com containing a Winner Ford customer's email address.

## POLISTINA AND DIRENZO'S RESIGNATION AND CONTINUING MISCONDUCT

36.    On or about May 26, 2006, Polistina informed Donald Slipp, Winner Ford's Vice

President, that DiRenzo had resigned from Winner Ford.  DiRenzo claimed that he was planning

to work for a security firm in Philadelphia.

37.    Subsequently, Polistina informed Slipp that he was also resigning.  Polistina

claimed that he was going to buy and sell real estate.

38.    Even following the notice of their resignations, they continued to use Winner

Ford's information and its resources to promote their scheme despite their status as employees of

Winner Ford.

39.    On May 28, 2006, DiRenzo emailed a Winner Ford customer stating:

> My question to you is in regards to the equipment quote, would it
> be okay if I forwarded it to a friend of mine who does this work for
> him to quote you?
>
> I don't want Winner to know I am helping this guy out, but the
> company is aces and I want to help him.

40.    On May 31, 2006, DiRenzo sent an email from the computer assigned to him by

Winner Ford to Polistina at the email address lenp64@aol.com stating:

> Len:
>
> I need the day nj bus info for bidding, also the affirm action sheet
> and stockholder info.
>
> Need ASAP!!
>
> Rick

41.   Also on May 31, 2006, DiRenzo sent emails from his Winner Ford computer to dnovelli@co.bergen.nj.us, JimPenn@CapeMayCity.com, and jvolpe@passaiccountynj.org requesting that bid specifications be sent to "Don Phillips" of Day Fleet at DiRenzo's home address.

42.   On May 31, 2006, Polistina forwarded a file containing a list of bids from municipal customers provided by a service to which Winner Ford subscribed to his home email addresses from the computer assigned to him by Winner Ford.

43.   That same day, Polistina forwarded to his personal email account an email message from a Winner Ford customer requesting information on purchasing a Ford Escape.

44.   On June 3, 2006, DiRenzo sent emails from his Winner Ford computer to pmercanti@co.gloucester.nj.us, info@northpennwater.org, tantonucci@keyportonline.com, and jestok@gatewayk12.org requesting to have bid specifications sent to his home or, in the case of pmercanti@co.gloucester.nj.us, emailed to his home email address.

45.   On June 5, 2006, DiRenzo sent an email to Don Phillips of Day in which he stated:

> Don:
>
> I need Ford GPC Concessions for the Septa Bid, Fleet #QB549
>
> Bid is due Friday
>
> Email or fax GPCS on Thursday.

46.   Polistina and DiRenzo both worked at Winner Ford through June 9, 2006.

47.   Following their departure from Winner Ford, Polistina and DiRenzo began working for Day and Autoport.  They have solicited and continue to solicit Winner Ford customers for fleet sales and up-fitting business.

13

48.     In September 2006, at a meeting of the Pennsylvania Association of Councils of Government in Cranbury, Pennsylvania, Day's fleet manager, Michael Viscusi, approached Winner Ford's Fleet General Manager, Richard Coyle, and stated that he was "going after all [Winner Ford's] business."

49.     Day has not previously competed with Winner Ford in New Jersey. Autoport had only engaged in limited activity in the region, primarily dealing with original equipment manufacturers in preparation for overseas shipping. Since joining forces with Polistina and DiRenzo, however, both Day and Autoport have submitted bids and solicited customers in this region.

50.     Day and Autoport, through their relationships with Polistina and DiRenzo, have now entered Winner Ford's market with the benefit of all of Winner Ford's trade secrets and confidential information.

51.     If Polistina and DiRenzo are permitted to continue working for or with Day and Autoport, Winner Ford will suffer irreparable injury which can only be avoided by enjoining Polistina and DiRenzo from working for or with Day and Autoport for an appropriate period of time. Based on the similarity between Polistina and DiRenzo's apparent job responsibilities at Day and Autoport, and their former responsibilities at Winner Ford, Polistina and DiRenzo cannot possibility perform their responsibilities at Day and Autoport without disclosing and relying upon Winner Ford's trade secrets and confidential information. If Polistina and DiRenzo were to reveal Winner Ford's confidential, trade secret, and proprietary business information to Day and/or Autoport, it would be extremely harmful to Winner Ford's competitive information in the marketplace.

52.     Furthermore, on information and belief, neither Day nor Autoport has taken appropriate measures to prevent the misappropriation of Winner Ford's confidential and trade secret information.

53.     By virtue of Defendants' unlawful conduct described above, Winner Ford has already suffered serious and extensive economic and business injury, and if such conduct is not enjoined, Winner Ford faces further injury which is immediate and irreparable.  The harm to Winner Ford includes, but is not limited to, the misappropriation, misuse, and disclosure of Winner Ford's trade secrets and confidential information, the loss of Winner Ford's goodwill, and the impairment of and interference with Winner Ford's contractual relations with its employees and its customers.

## COUNT I
## VIOLATION OF THE FEDERAL COMPUTER FRAUD AND ABUSE ACT
### (Against All Defendants)

54.     Winner Ford incorporates by reference paragraphs 1 through 53 of its Verified Complaint.

55.     By knowingly copying, diverting, and/or misappropriating Winner Ford's proprietary information and diverting business from Winner Ford, on their own behalf and as agents of Day and Autoport, and by causing damages in excess of $5,000, Defendants violated the Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

## COUNT II
## BREACH OF THE DUTY OF LOYALTY
### (Against Polistina and DiRenzo)

56.     Winner Ford incorporates by reference paragraphs 1 through 55 of its Verified Complaint.

57.     As employees of Winner Ford, Polistina and DiRenzo owed contractual and common law duties to act in Winner Ford's interests.

58.     During and after their employment with Winner Ford, Polistina and DiRenzo actively competed against Winner Ford, diverted business from Winner Ford, aided Winner Ford's competitors, and used Winner Ford's assets, resources, and trade secrets and confidential information to their own advantage and to Winner Ford's detriment.

59.     Further, upon information and belief, Polistina and DiRenzo intentionally, recklessly, or negligently disrupted Winner Ford's business by, inter alia not placing orders for customers and placing incorrect orders.

60.     Polistina and DiRenzo's actions were in violation of their duty of loyalty to Winner Ford.

61.     Polistina and DiRenzo's actions were intentional, willful, outrageous, and malicious and justify the imposition of punitive damages.

## COUNT III
## BREACH OF CONTRACT
### (Against Polistina)

62.     Winner Ford incorporates by reference paragraphs 1 through 61 of its Verified Complaint.

63.     By his conduct described above, Polistina has breached his Manager Compensation Plan and Non-Competition/Non-Solicitation/Confidentiality Agreement with Winner Ford by competing against Winner Ford, by soliciting, assisting, aiding, and/or abetting DiRenzo to leave the employ of Winner Ford and compete against it, and by disclosing Winner Ford's confidential and proprietary information.

64.     As a result of Polistina's conduct, Winner Ford has suffered damages.

## COUNT IV
## BREACH OF CONTRACT
### (Against DiRenzo)

65.     Winner Ford incorporates by reference paragraphs 1 through 64 of its Verified

Complaint.

66.     By his conduct described above, DiRenzo has breached his Manager

Compensation Plan and Non-Competition/Non-Solicitation/Confidentiality Agreement with

Winner Ford by competing against Winner Ford, by soliciting, assisting, aiding, and/or abetting

Polistina to leave the employ of Winner Ford and compete against it, and by disclosing Winner

Ford's confidential and proprietary information.

67.     As a result of DiRenzo's conduct, Winner Ford has suffered damages.

## COUNT V
## MISAPPROPRIATION OF TRADE SECRETS AND CONFIDENTIAL INFORMATION
### (Against All Defendants)

68.     Winner Ford incorporates by reference paragraphs 1 through 67 of its Verified

Complaint.

69.     Defendants, by the conduct described above, have engaged in actual or threatened

misappropriation of Winner Ford's trade secrets and confidential information in violation of New

Jersey law in that:  (a) Polistina and DiRenzo possess confidential information and trade secrets

belonging to Winner Ford that will afford Defendants a competitive advantage; (b) Winner Ford

disclosed such information to Polistina and DiRenzo in confidence and they have a duty not to

disclose this information; (c) their positions with Day and Autoport are so similar to their

positions with Winner Ford that they cannot possibly perform the functions of their positions

without using and/or disclosing Winner ford's confidential information and trade secrets; (d)

upon information and belief, Polistina and DiRenzo have disclosed Winner Ford's confidential

information and trade secrets to Day and Autoport and are using such information on their

17

behalf; and (e) such disclosure would be and is unfair and unjust to Winner Ford and would cause Winner Ford to suffer irreparable harm.

70.    Winner Ford has no adequate remedy at law and would suffer substantial and immediate irreparable harm unless Defendants are enjoined as requested below.

71.    Greater injury will be inflicted on Winner Ford by the denial of this relief than will be inflicted on Defendants by the granting of this relief.

72.    Defendants' actions were intentional, willful, outrageous, and malicious, and justify the imposition of punitive damages.

### COUNT VI
### TORTIOUS INTERFERENCE
### (Against All Defendants)

73.    Winner Ford incorporates by reference paragraphs 1 through 72 of its Verified Complaint.

74.    By their conduct described above, Defendants have knowingly, purposefully, maliciously, and with an improper motive, interfered with Winner Ford's existing contractual relationships with its customers, and this interference has caused harm to Winner Ford.

75.    Defendants have also knowingly, purposefully, and maliciously, and with an improper motive, interfered with potential customers with whom Winner Ford had and has a reasonable expectation of economic advantage.

76.    In addition, Day and Autoport knowingly, purposefully, maliciously, and with an improper motive, interfered with Winner Ford's contractual relationships with Polistina and DiRenzo.

77.    Further, Polistina knowingly, purposefully, maliciously, and with an improper motive, interfered with Winner Ford's contractual relationship with DiRenzo.  Similarly,

18

DiRenzo knowingly, purposefully, maliciously, and with an improper motive, interfered with

Winner Ford's contractual relationship with Polistina.

78.     Defendants' actions were without privilege or justification and were intentional,

willful, outrageous, malicious, and justify the imposition of punitive damages.

**COUNT VII**
**VIOLATION OF N.J. STAT. ANN. 2A:38A-3**
**(Against All Defendants)**

79.     Winner Ford incorporates by reference paragraphs 1 through 78 of its Complaint.

80.     By their conduct described above, Defendants purposefully, knowingly, and

without authorization accessed Winner Ford's computers, computer system, and/or computer

network and took data existing on its computers, computer system, and/or computer network.

81.     Defendants' conduct was in violation of N.J. Stat. Ann. 2A:38A-3 and entitles

Winner Ford to an award of compensatory damages, punitive damages, attorneys' fees, costs of

litigation, and costs of investigation.

**WHEREFORE**, Winner Ford requests the following relief:

a.      That Polistina and DiRenzo be enjoined, preliminarily and permanently thereafter,

from employment with or assisting Day or Autoport in any way in the bidding, marketing, sale,

repair, or up-fitting of fleet automobiles or trucks.

b.      That Day and any of its parents, subsidiaries, and/or affiliates be enjoined,

preliminarily and permanently thereafter, from employing, aiding or assisting Polistina and/or

DiRenzo in any way in the bidding, marketing, sale, repair, or up-fitting of fleet automobiles or

trucks.

c.      That Autoport and any of its parents, subsidiaries, and/or affiliates be enjoined,

preliminarily and permanently thereafter, from employing, aiding or assisting Polistina and/or

19

DiRenzo in any way in the bidding, marketing, sale, repair, or up-fitting of fleet automobiles or trucks.

d.      That Polistina and DiRenzo be enjoined, preliminarily and permanently thereafter, from directly or indirectly aiding, counseling, or inducing any employee of Winner Ford to engage in any business activity in connection with the sale, leasing, maintenance, or repair of foreign or domestic automobiles or other motor vehicles.

e.      That Defendants be enjoined, preliminarily and permanently thereafter, from disclosing to anyone proprietary, confidential, or trade secret information of Winner Ford.

f.      That Defendants, and all other persons or entities acting in concert with them or on their behalf, be enjoined, preliminarily and permanently thereafter, from directly or indirectly using, disclosing, or retaining any proprietary, confidential, or trade secret information of Winner Ford.

g.      That Defendants, and all other persons or entities acting in concert with them or on their behalf, be enjoined, preliminarily and permanently thereafter, from directly or indirectly soliciting, inducing, recruiting, encouraging, assisting, advising, or directing any individual who possesses or has access to Winner Ford's proprietary, confidential, or trade secret information to work for or with Defendants.

h.      A judgment in Winner Ford's favor and against Defendants for monetary damages, including, but not limited to, all amounts necessary to compensate Winner Ford for Defendants' wrongful activities including reasonable attorneys' fees and costs.

i.      A judgment in Winner Ford's favor and against Defendants for punitive and/or exemplary damages for their willful and malicious conduct.

20

j.      That this Court order such other and further relief as it deems appropriate.

Respectfully submitted,

William J. Leahy
Darcy D. Walker
Littler Mendelson, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA  19102
(267) 402-3000 (telephone)
(267) 402-3131 (facsimile)
wleahy@littler.com
dwalker@littler.com

Attorneys for Plaintiffs Chas S. Winner, Inc. and
Emergency Accessories and Installation, Inc.

Dated:  October 10, 2006

## VERIFICATION

I, Donald J. Slipp, hereby certify as follows:

1.     I am Vice President of Chas S. Winner, Inc. ("Winner Ford").  As such, I am authorized to make this Verification on behalf of the Plaintiffs.

2.     I have read the attached Verified Complaint and based on my personal knowledge and my knowledge of information reported to me by subordinates and colleagues who report to me, the factual allegations contained in the Verified Complaint are true.

3.     I certify under penalty of perjury under the laws of the United States of America that the foregoing statements made by me are true and correct,

_____
Donald J. Slipp

Executed on: _10 - 9 - 06_

# EXHIBIT A

**Name of Employer:** Chas. S. Winner, Inc., DBA Winner Ford



**Name of Employee:** LEONARD L. POLISTINA

Chas. S. Winner, Inc., herein referred to as "Company", hereby employees LEONARD L. POLISTINA, Herein referred to as "Employee", to serve and perform such duties at times and places and in such manner as Company may from time to time direct.

1. **COMPENSATION/BONUS.** Company shall pay Employee and Employee shall accept from Company in full payment for Employee's services hereunder, compensation, see Appendix "A". In the event of termination of Employee's employment by the Company, prior to the end of any calendar month, the bonus for that month will be calculated on a pro-rata basis. Also, a bonus will not be paid to any employee who quits without giving 14 days written notice to the General Manager. Employee must be employed by Company on December 31st, of the bonusable year to receive any annual bonuses.

    Calculation and Payment: Your Bonus shall be calculated based upon the month-end financial review prepared internally by the Company and set forth in the Monthly Financial Statements/Final Daily Operating Control (DOC). That month-end review and preparation of the Monthly Statement is typically concluded by the end of the first week of the following month and the Bonus is typically paid at the end of the second week of that month.

2. **EMPLOYMENT AT WILL.** Nothing contained herein shall be construed to create a term of employment. Rather you shall be considered an employee at will and your employment by Company may be terminated with or without cause.

3. **NON-COMPETITION.** During your employment by Company, you shall not engage in any business activity in connection with the sale, brokerage, leasing, maintenance or repair of foreign or domestic automobiles, trucks, buses or any other form of automotive business within thirty miles of the Company.

4. **NON-SOLICITATION.** During your employment by Company and for a one (1) year period following the termination of your employment you shall not directly or indirectly (including by aiding or counseling any other person to) approach or attempt to induce any employee of the Company (1) to leave the employ of the Company, and/or (2) to engage in any business activity in connection with the sale, brokerage, leasing, maintenance or repair of foreign or domestic automobiles, trucks, buses or any other automotive business within thirty (30) miles of Company.

5. **CONFIDENTIALITY.** During your employment by Company and for a two (2) year period following the termination of your employment you shall not disclose to any other person, other than a person to whom disclosure is reasonably necessary or appropriate in connection with your performance as a Manager of the Company, any confidential or proprietary information obtained by you while in the employ of the Company, including but not limited to Company policies and procedures, customer names or files, prospect records, lease reports, follow-up lists and/or other sales, lease or repair/maintenance records.

Page 1 of 2

_____ (MANAGER INITIAL)          _____ (INITIAL COMPANY)

Revised 12/31/01

6.   **MISCELLANEOUS.**

a.   No provisions of this Manager Compensation Plan and Non-Competition/Non-Solicitation/Confidentiality Agreement may be waived, modified or discharged unless such waiver, modification or discharge is agreed to in writing by the party against whom such waiver, modification, or discharge is asserted.  No waiver by either party hereto at any time of any breach by the other party hereto of, or compliance with, any condition or provision of this Manager Compensation Plan and Non-Competition/Non-Solicitation/ Confidentiality Agreement to be performed by such other party shall be deemed a waiver of similar or dissimilar provisions or conditions at the same or at any prior or subsequent time.

b.   No agreements or representations, oral or otherwise, express or implied, with respect to the subject matter hereof have been made by either party which are not set forth expressly in this Manager Compensation Plan and Non-Competition/Non-Solicitation/Confidentiality Agreement.

c.   The validity, interpretation, constriction and performance of this Manager Compensation Plan and Non-Competition/Confidentiality Agreement shall be governed by the laws of the State of New Jersey/Pennsylvania.

d.   Should any valid federal or state law or final determination of any administrative agency or court of competent jurisdiction affect any provision of this Manager Compensation Plan and Non-Competition/Non-Solicitation/Confidentiality Agreement, the provision or provisions so affected shall be automatically conformed to the law or determination and otherwise this Agreement shall continue in full force and effect.

e.   The invalidity or unenforceability of any provision or provisions of this Manager Compensation Plan and Non-Competition/Compensation Plan and Non-Competition/Non-Solicitation/Confidentiality Agreement shall not affect the validity or enforceability of any other provision of this Manager's Compensation Plan and Non-Competition/Non-Solicitation/Confidentiality Agreement, which shall remain in full force and effect,  provided, however, that if a court with subject matter jurisdiction over subsections 4, 5, or 6 of this Manager Compensation Plan and Non-Competition/Non-Solicitation/Confidentiality Agreement should determine that the scope of subsections 4, 5, or 6 to be invalid and unenforceable instead reduce the scope or duration, or both, by the minimum amount necessary in order that the scope and duration of sections 4, 5 or 6 shall conform with all legal requirements.

I have read and understood the terms of my compensation plan as a Manager/Employee of Company and my obligations regarding competition, employee solicitation and confidential information.

**Page 2 of 2**

_____
WITNESS

_____
WITNESS

12-31-01
DATE

12-31-01
DATE

_____
MANAGER

_____
CORPORATE OFFICER

Revised 12/31/01

# EXHIBIT B

## MANAGER COMPENSATION PLAN AND NON-COMPETITION/
## NON-SOLICITATION/CONFIDENTIALITY AGREEMENT

**Name of Employer:** Chas. S. Winner, Inc., DBA Winner Ford/Emergency Accessories & Installation, Inc.

**Name of Employee:** MR. RICK DIRENZO

 COPY # 1  8-19.02

Chas. S. Winner, Inc., DBA Winner Ford/Emergency Accessories & Installation, herein referred to as "Company," hereby employee **Mr. Rick DiRenzo**, herein referred to as "Employee," to serve and perform such duties at times and places and in such manner as Company may from time to time direct.

1. **COMPENSATION/BONUS.**     Company shall pay employee and Employee shall accept from Company in full payment for Employee's services hereunder, compensation, see Appendix "A." In the event of termination of Employee's employment with the Company prior to the end of any calendar month, the bonus for that month will be calculated, based on a pro-rata basis. Employee must be employed by Company on December 31st of the bonusable year to receive any annual bonuses.

   Calculation and Payment: Your bonus shall be calculated based upon the month-end financial review prepared internally by the Company and set forth in the Monthly Financial Statements/Final Daily Operating Control (DOC), gross income minus direct and allocated expense as prepared by the Chief Financial Officer and/or Controller. That month-end review and preparation of the Monthly Statement is typically concluded by the end of the first week of the following month and the Bonus is typically paid at the end of the second week of that month.

2. **EMPLOYMENT AT WILL.** Nothing contained herein shall be construed to create a term of employment. Rather you shall be considered an employee at will and your employment by Company may be terminated with or without cause.

3. **NON-COMPETITION.** During your employment by Company, you shall not engage in business activity to include sale, leasing, installation or up-fit of any emergency lighting, computers, radios and/or any equipment or supplies similar to items installed or provided by the Company; in connection with sale, leasing maintenance or repair of foreign or domestic automobiles or other motor vehicles within the State of New Jersey and the Commonwealth of Pennsylvania.

4. **NON-SOLICITATION.** During your employment by Company and for one (1) year period following the termination of your employment you shall not directly or indirectly (including by aiding or counseling any other person) to approach or attempt to induce any employee of the Company (1) to leave the employ of the Company, and/or engage in business activity to include sale, leasing, installation or up-fit of any emergency lighting, computers, radios and/or any equipment or supplies similar to these installed or provided by the Company; to engage in any business activity in connection with the sale, leasing, maintenance or repair of foreign or domestic automobiles or other motor vehicles within the State of New Jersey and the Commonwealth of Pennsylvania.

5. **CONFIDENTIALITY:** During your employment by Company and for a two (2) year period following the termination of your employment you shall not disclose to any other person, other than a person to whom disclosure is reasonably necessary or appropriate in connection with your performance as a Manager of the Company, and confidential or proprietary information obtained by you while in the employ of the Company, including but not limited to Company policies and procedures, customer names or files, prospect records, lease reports, follow-up lists and/or other sales, lease or repair/maintenance records.

Page 1 of 2

\_\_\_\_\_ (Manager Initials)

\_\_\_\_\_ (Initial Company)



6.    **MISCELLANEOUS.**

a.    No provisions of this Manager Compensation Plan and Non-Competition/Non-Solicitation/Confidentiality Agreement may be waived, modified or discharged unless such waiver, modification or discharge is agreed to in writing by the party against whom such waiver, modification, or discharge is asserted. No waiver by either party hereto at any time of any breach by the other party hereto of, or compliance with, any condition or provision of this Manager Compensation Plan and Non-Competition/Non-Solicitation/Confidentiality Agreement to be performed by such other party shall be deemed a waiver of similar or dissimilar provisions or conditions at the same or at any prior or subsequent time.

b.    No agreements or representations, oral or otherwise, express or implied, with respect to the subject matter hereof have been made be either party which are not set forth expressly in this Manager Compensation Plan and Non-Competition/Non-Solicitation/Confidentiality Agreement.

c.    The validity, interpretation, constriction and performance of this Manager Compensation Plan and Non-Competition/Confidentiality Agreement shall be governed by the laws of the State of New Jersey.

d.    Should any valid federal or state final determination of any administrative agency or court of competent jurisdiction affect any provision of this Manager Compensation Plan and Non-Competition/Non-Solicitation/Confidentiality Agreement, the provision or provisions so affected shall be automatically conformed to the law or determination and otherwise this Agreement shall continue in full force and effect.

e.    The invalidity or unenforceability of any provision or provisions of this Manager Compensation Plan and Non-Competition/Non-Solicitation/Compensation Plan and Non-Competition/Non-Solicitation/Confidentiality Agreement shall not affect the validity or enforceability of any other provision of this Manager's Compensation Plan and Non-Competition/Non-Solicitation/Confidentiality Agreement, which shall remain in full force and effect, provided, however, that if a court with subject matter jurisdiction over subsections 4, 5, or 6 of this Manager Compensation Plan and Non-Competition/Non-Solicitation/Confidentiality Agreement should determine that the scope of subsections 4, 5, or 6 to be invalid and unenforceable instead reduce the scope or duration, or both, by the minimum amount necessary in order that the scope and duration of sections 4, 5 or 6 shall conform with all legal requirements.

I have read and understood the terms of my compensation plan as a Manager/Employee of Company and my obligations regarding competition, employee solicitation and confidential information.

Page 2 of 2

_____          _____          _____
WITNESS                        8-9-02                         Kohl Dir
                               DATE                           MANAGER

_____          _____          _____
WITNESS                        8-19-02                        
                               DATE                           CORPORATE OFFICER

Revised:  7/98

# EXHIBIT C

### MANAGER COMPENSATION PLAN AND NON-COMPETITION/NON-SOLICITATION/CONFIDENTIALITY AGREEMENT

**Name of Employer:   Chas. S. Winner, Inc. DBA Winner Ford**

**Name of Employee:   RICHARD DIRENZO**

**COPY**
#2 10-13-08

Chas. S. Winner, Inc., herein referred to as "Company", hereby employees

Herein referred to as "Employee", to serve and perform such duties at times and places and in such manner as Company may from time to time direct.

1.   COMPENSATION/BONUS.  Company shall pay Employee and Employee shall accept from Company in Full payment for Employee's services hereunder, compensation, see Appendix "A".  In the event of termination of Employee's employment by the Company, prior to the end of any calendar month, the bonus for that month will be calculated on a pro-rata basis.  Also, a bonus will not be paid to any employee who quits without giving 14 days written notice to the General Manager.  Employee must be employed by Company in December 31st, of the bonusable year to receive any annual bonuses.

> Calculation and Payment: Your Bonus shall be calculated based upon the month-end financial review prepared internally by the Company and set forth in the Monthly Financial Statements/Final Daily Operating Control (DOC).  That month-end review and preparation of the Monthly Statement is typically concluded by the end of the first week of the following month and the Bonus is typically paid at the end of the second week of that month.

2.   **EMPLOYMENT AT WILL.**   Nothing contained herein shall be construed to create a term of employment.  Rather you shall be considered an employee at will and your employment by Company may be terminated with or without cause.

3.   **NON-COMPETITION.**   During your employment by Company, you shall not engage in business activity in connection with the sale, leasing, maintenance or repair of Ford or Lincoln Mercury cars and trucks within thirty (30) miles of the Company.

4.   **NON-SOLICITATION.**   During your employment by Company and for a one (1) year period following the termination of your employment you shall not directly or indirectly (including by aiding or counseling any other person to) approach or attempt to induce any employee of the Company (1) to leave the employ of the Company, and/or (2) to engage in any business activity in connection with the sale, leasing, maintenance or repair of foreign or domestic automobiles or other motor vehicles within thirty (30) miles of Company.

_(Manager Initial)_                                        _(Initial Company)_

Page 2
Confidentiality



**COPY**

5.   **CONFIDENTIALITY.**  During your employment by Company and for a two (2) year period following the termination of your employment you shall not disclose to any other person, other than a person to whom disclosure is reasonably necessary or appropriate in connection with your performance as a Manager of the Company, any confidential or proprietary information obtained by you while in the employ of the Company, including but not limited to the Company policies and procedures, customer name or files, prospect records, lease reports, follow-up lists and/or other sales, lease or repair/maintenance records.

6.   **MISCELLANEOUS**

a.   No provisions of this Manager Compensation Plan and Non-Competition/Non-Solicitation/Confidentiality Agreement may be waived, modified or discharged unless such waiver, modification or discharge is agreed to in writing by the party against whom such waiver, modification, or discharge is asserted.  No waiver by either party hereto at any time of any breach by the other party hereto of, or compliance with any condition or provision of this Manager Compensation Plan and Non-Competition/Non-Solicitation/Confidentiality Agreement to be performed by such other party shall be deemed a waiver of similar or dissimilar provisions or conditions at the same or at any prior or subsequent time.

b.   No agreements or representations, oral or otherwise, express or implied, with respect to the subject matter hereof have been made by either party which are not set forth expressly in this Manager Compensation Plan and Non-Competition/Non-Solicitation/Confidentiality Agreement.

c.   The validity, interpretation, constriction and performance of this Manager Compensation Plan and Non-Competition/Confidentiality Agreement shall be governed by the laws of the state of New Jersey/Pennsylvania.

d.   Should any valid federal or state law or final determination of any administrative agency or court of competent jurisdiction affect any provision of this Manager Compensation Plan and Non-Competition/Non-Solicitation/Confidentiality Agreement, the provision or provisions so affected shall be automatically conformed to the law or determination and otherwise this Agreement shall continue in full force and effect.

_____ (Manager Initial)                    _____ (Initial Company)

Page 3
Confidentiality



e.   The invalidity or unenforceability of any provision or provisions of this Manager
Compensation Plan and Non-Competition/Non-Solicitation/Compensation Plan
and Non-Competition/Non-Solicitation/Confidentiality Agreement shall not
affect the validity or enforceability of any other provision of this Manager's
Compensation Plan and Non-Competition/Non-Solicitation/Confidentiality
Agreement, which shall remain in full force and effect, provided, however, that if
a court with subject matter jurisdiction over subsections 4, 5, or 6 of this
Manager Compensation Plan and Non-Competition/Non-
Solicitation/Confidentiality Agreement should determine that the scope of
subsections 4, 5, or 6 to be invalid and unenforceable instead reduce the scope or
duration, or both, by the minimum amount necessary in order that the scope and
duration of sections 4, 5, or 6 shall conform with all legal requirements.

I have read and understand the terms of my compensation plan as a Manager/Employee
of Company and my obligations regarding competition, employee solicitation and
confidential information.

_____          10-13-03          _____
WITNESS                            DATE               MANAGER

_____          10-13-03          _____  VP-GM
WITNESS                            DATE               CORPORATE OFFICER