**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CHAS. S. WINNER, INC. and EMERGENCY ACCESSORIES & INSTALLATION, INC., :<br>Plaintiffs, :<br>v. :<br>LEONARD L. POLISTINA, RICHARD DIRENZO, DAY AUTOMOTIVE RESOURCES, INC. and AUTOPORT, INC. :<br>Defendants. : | Civil Action No.<br><br>06-4865 (NLH)<br><br><br>_____**OPINION** |

**APPEARANCES:**

William J. Leahy
Littler Mendelson
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102
*Attorney for Plaintiffs*

Peter Jay Boyer
McCarter & English, LLP
Mellon Bank Center
1735 Market Street, 7th Floor
Philadelphia, PA 19103
*Attorney for Defendants Leonard L. Polistina and Richard Direnzo*

Steven Karl Kudatzky
6000 Sagemore Drive, Suite 6301
Marlton, NJ 08053
*Attorney for Defendant Day Automotive Resources, Inc.*

Edward J. Kosmowski
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. BOX 391
Wilmington, DE 19899-0391
*Attorney for Defendant Autoport, Inc.*

**HILLMAN, District Judge**

Plaintiffs state in their complaint that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because they have asserted a claim under the Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"). Autoport filed a Motion to Dismiss plaintiffs' complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim Upon Which Relief can be Granted ("Motion"). The Motion was joined by defendants Day Automotive Resources, Inc., Leonard L. Polistina, and Richard DiRenzo. Because plaintiffs have failed to allege facts that show they suffered a "loss" as defined under the CFAA, we dismiss the federal claim and grant defendants' motion to dismiss for lack of subject matter jurisdiction. Since we dismiss plaintiffs' complaint on that ground, we do not reach the merits of defendants' motion to dismiss plaintiffs' state law claims.

### I.  BACKGROUND

Plaintiffs Chas. Winner, Inc. ("Winner") and Emergency Accessories, Inc. ("EAI") filed a complaint against defendants Leonard Polistina, Richard DiRenzo, Day Automotive Resources,

2

Inc. ("Day") and Autoport, Inc. ("Autoport") (collectively, "defendants"), for alleged violations of the CFAA and various state law claims. Plaintiffs sought preliminary and permanent injunctive relief as well as damages against defendants. After a hearing, counsel for the parties reached a settlement regarding the injunction and submitted a temporary consent order.

As alleged by plaintiffs, Winner sells police vehicles, ambulances, and other emergency vehicles to governmental entities in New Jersey, Pennsylvania, Delaware, New York and Maryland. Winner also provides "up-fitting" services by installing computers, lightbars, and other equipment in the government vehicles. On January 3, 2000, Winner hired DiRenzo as Manager of EAI, and subsequently promoted him to Manager, EAI & Fleet. On August 19, 2002, and again on October 13, 2003, DiRenzo signed employment contracts that included a non-competition/non-solicitation/confidentiality agreement. On January 2, 2002, Winner hired Polistina as its General Manager of the Fleet Division and subsequently promoted him to Vice President of Fleet Sales. Polistina signed an employment contract that included a non-competition/non-solicitation/confidentiality agreement.

Winner and EAI allege that in early 2006, Polistina and DiRenzo developed and orchestrated a plan to divert customers from them to Day and Autoport. They provided emails indicating that Polistina and DiRenzo obtained bids for Day and Autoport

3

while employed at Winner and EAI.  On or about May 26, 2006, Polistina informed Winner that he and DiRenzo were resigning. The effective date of their resignation was June 9, 2006.  Winner alleges that after their resignation, Polistina and DiRenzo continued to send out emails in an effort to divert business to Day and Autoport and to solicit Winner customers for fleet sales and up-fitting business.  Polistina and DiRenzo are currently employed by Day and Autoport.

It is important to note that with one exception,[1] the only factual allegations in the complaint that concern the use or misuse of a computer are allegations that the individual defendants sent internal and external e-mails to further the interests of their prospective employer and in a manner disloyal to their former employer.  Nowhere in the complaint is it alleged that the individual defendants damaged any computers, caused any other harm to computers, or exceeded their authorized access to files or other stored data.  In fact, the allegation regarding authorized access is the opposite.[2]  What this complaint boils down to are allegations of breach of employment covenants and the usual torts that attend such employment disputes.  Such disputes

---

[1] The plaintiffs allege that defendant Polistina used a computer provided by the plaintiffs to forward a file obtained from a service subscribed to by plaintiffs.

[2] The complaint alleges that both Polistina and Direnzo "had complete access" to the plaintiffs' proprietary business information. See Verified Complaint ¶¶ 16 and 22.

existed long before e-mails and the routine use of computers to communicate business information.  Absent diversity jurisdiction, a case of this kind sounds in state statutory and common law and is heard in state court.

## II.  DISCUSSION

In reviewing a motion to dismiss brought pursuant to 12(b)(1), we must first decide whether the movant is bringing a facial attack or a factual attack.  See Mortensen v. First Federal Savings & Loan, 549 F.2d 884, 891 (3d Cir. 1977).  In deciding a motion that attacks the complaint on its face, the court must accept the allegations in the complaint as true.  Id. If the motion attacks the facts supporting jurisdiction, the standard is somewhat unique.  As explained by the Third Circuit,

> The factual attack ... differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56.  Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction [-] its very power to hear the case[.] [T]here is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

Id.

Here, defendants are bringing a factual attack.  They argue

that the loss alleged by plaintiffs is not recognized under the definition of "loss" under the CFAA and, therefore, the claim should be dismissed. In deciding a 12(b)(1) factual attack on plaintiffs' complaint, we do not presume the truthfulness of the allegations in plaintiff's complaint, and we evaluate the jurisdictional claims on the merits. It is plaintiff's burden to prove that this Court can exercise jurisdiction over their CFAA claim. Id.

### A. Civil Action Under the CFAA

The CFAA was historically a criminal statue penalizing unauthorized access, i.e., "hacking" into computers. See P.C. Yonkers, Inc. v. Celebrations The Party and Seasonal Superstore, LLC, 428 F.3d 504, 510 (3d Cir. 2005)(citing Pacific Aerospace & Elecs., Inc. v. Taylor, 295 F.Supp.2d 1188, 1196 (E.D. Wash. 2003)). The CFAA has been used increasingly in civil suits by employers to sue former employees and their new companies for misappropriation of information from the employer's computer system. Id. (citing Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc., 119 F. Supp.2d 1121, 1124 & n. 3 (W.D. Wash. 2000)).

Section 1030(g) provides civil remedies for violations of the CFAA. That section reads:

> (g) Any person who suffers damage or loss by
> reason of a violation of this section may maintain

>   a civil action against the violator to obtain
>   compensatory damages and injunctive relief or
>   other equitable relief. A civil action for a
>   violation of this section may be brought only if
>   the conduct involves 1 of the factors set forth in
>   clause (i), (ii), (iii), (iv), or (v) of
>   subsection (a)(5)(B).

Plaintiff allege that defendants have caused loss under subsection (a)(5)(B)(i), which provides:

>   (B) by conduct described in clause (i), (ii), or
>   (iii) of subparagraph (A), caused (or, in the case
>   of an attempted offense, would, if completed, have
>   caused)--
>
>   (i) loss to 1 or more persons during any 1-year
>   period (and, for purposes of an investigation,
>   prosecution, or other proceeding brought by the
>   United States only, loss resulting from a related
>   course of conduct affecting 1 or more other
>   protected computers) aggregating at least $5,000
>   in value;

Subsection (a)(5)(B)(i) appears to require that plaintiffs also plead "conduct described in clause (i), (ii), or (iii) of subparagraph (A)." However, in *Yonkers* the Third Circuit stated, "[w]e do not read section 1030(g)'s language that the claim must *involve* one or more of the numbered subsections of subsection (a)(5)(B) as limiting relief to claims that are *entirely based only on* subsection (a)(5), but, rather, as requiring that claims brought under other sections must meet, in addition, one of the five numbered (a)(5)(B) "tests." 428 F.3d at 512 (emphasis in original). The Third Circuit rejected the notion that relief under § 1030(g) was limited to only subsection (a)(5) claims, and

7

concluded that plaintiff presented a claim for a violation of subsection (a)(4) as long as he included a specific allegation of one of the five enumerated factors in subsection (a)(5)(B).  Id.[3]

Similar to the plaintiff in Yonkers, Winner and EAI have alleged a violation of 18 U.S.C. § 1030(a)(4),[4] and included a specific allegation of loss in excess of $5,000, under subsection (a)(5)(B)(i).  This allegation satisfies the requirement under § 1030(g) to plead conduct involving one of the five enumerated factors in subsection (a)(5)(B).[5]  Autoport argues, however, that

---

[3]  We also note that § 1030(g) provides civil relief for any "damage *or loss*."  Subsection (a)(5) describes conduct that causes only "damage."  If relief was limited to violations of (a)(5), then the words "or loss" in § 1030(g) would be meaningless.  As stated by the Third Circuit, "[W]e must take Congress' use of language as purposeful."  Yonkers, 428 F.3d at 512 (citing Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992)).

[4]  Subsection (a)(4) of the CFAA states,

> Whoever...knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period;

[5] We note that for a "facial attack," this allegation meets the liberal pleading requirements.  See Lockheed Martin Corp. v. Speed, No. 05-1580, 2006 WL 2683058, at *3 (M.D. Fla. Aug. 1, 2006)(although complaint alleging CFAA violation did not explicitly state what losses amounted to $5,000, liberal pleading requirements at motion to dismiss stage did not require such particularity); H&R Block Eastern Enterprises Inc. v. J&M Securities, LLC, No. 05-1056, 2006 WL 1128744, at *4 (W.D. Mo.

the CFAA claim should be dismissed because plaintiffs cannot prove loss as defined under the CFAA.

### B. <u>Allegation of "Loss" under the CFAA</u>

Autoport urges this Court to dismiss the CFAA claim because plaintiffs have not alleged that they suffered a loss cognizable under § 1030(e)(11).  Section 1030(e)(11) defines "loss" as:

> any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service;

18 U.S.C. § 1030(e)(11).

In furtherance of its argument, Autoport relies on <u>Nexans Wires S.A. v. Sark-USA, Inc.</u>, 319 F. Supp.2d 468, 475 (S.D.N.Y. 2004), <u>aff'd</u>, 166 Fed. App. 559 (2d Cir. 2006) for the proposition that "loss" means only "interruption of service" or the "impairment to the integrity of availability of data, a program, a system, or information."  In <u>Nexans</u>, the district court held that travel expenses of senior executives and lost revenue due to the use of the ill-gotten information was so

---

Apr. 24, 2006)(sufficient allegation of loss in CFAA complaint where plaintiff alleged unauthorized access and use of confidential information resulting in damages and loss of not less than $5,000, including costs to respond to offense).  We go beyond the pleading requirements because defendants have raised a "factual attack" to jurisdiction.

9

unrelated to the computer that it did not constitute loss under the CFAA. Id. at 476-77. We agree with the analysis in Nexus that the meaning of loss under the statute must pertain to "a cost of investigating or remedying damage to a computer, or a cost incurred because the computer's service was interrupted." Id. at 475.[6] See also Civic Center Motors, Ltd. v. Mason Street Imported Cars, Ltd., 387 F. Supp. 2d 378, 381 (S.D.N.Y. 2005); Moulton v. VC3, No. 1-434, 2000 WL 33310901, at *6 (N.D. Ga. Nov. 7, 2000).

Since Autoport has challenged the underlying factual assertions of plaintiff's CFAA claim, which claim is the basis for this Court's jurisdiction, the burden shifts to plaintiffs to prove this Court can exercise jurisdiction. Plaintiffs are permitted to submit information in rebuttal to Autoport's 12(b)(1) motion. See McCann v. Newman Irrevocable Trust, 458 F.3d 281, 290 (3d Cir. 2006)(stating that "[i]f a defendant contests any of the jurisdictional allegations as pled by the plaintiff, the court must permit the plaintiff to respond with rebuttal evidence in support of jurisdiction, and the court then decides the jurisdictional issue by weighing the evidence.").

In rebuttal, plaintiffs state that they expended in excess

---

[6] Plaintiffs are correct that this Court is bound by the decision in Yonkers rather than the opinion in Nexan. The Third Circuit, however, did not discuss the definition of "loss" in Yonkers. Rather, it held that relief under § 1030(g) is not limited to (a)(5) claims. 428 F.3d at 512.

of $5,000 to hire a computer expert to conduct an assessment and investigation. We find that this statement alone is insufficient to show that plaintiffs can prove loss under the CFAA. In providing rebuttal evidence, plaintiffs must allege facts that the damage or loss incurred was related to investigating or remedying damage to the computer, or due to interruption of the computer's service. See Moulton, 2000 WL 33310901 at *6 (holding that cost to assess unauthorized access that caused no harm to the computer or its contents was not "damage" under the Act).

Here, plaintiffs have simply stated that they hired a computer expert without providing the type of investigation or description of how the computer system was interrupted, damaged, or restored.[7] Therefore, we find that plaintiffs have not met their burden of alleging facts that show they can prove they incurred damage or loss under the CFAA.

In summary, Title 18, U.S.C. Section 1030 is a criminal statute. As such, it is narrowly construed, Dowling v. United

---

[7] Plaintiffs have provided the Court with no evidence whatsoever regarding this alleged investigation and how it was related to any harm of damage to plaintiffs' computer. Indeed, the only evidence cited by plaintiffs is a reference to paragraph 55 of the complaint, the merely conclusory allegation that Section 1030 was violated. In this vacuum, one is left to assume that any costs incurred by plaintiffs were spent recovering the offending e-mails and searching for other evidence of disloyal conduct. Gathering evidence from a computer to prove your state law employment claims does not turn defendants' conduct - even disloyal conduct in breach of contract - into the kind of conduct that so concerned Congress that it criminalized it.

States, 473 U.S. 207, 213 (1985), and encompasses only that conduct Congress intended to criminalize.  It follows then -- unless it expressly states otherwise – that when Congress created a private cause of action within this criminal statute it intended to limit that cause of action to the conduct reached by the criminal statute.  See 18 U.S.C. § 1030(g)("Any person who suffers . . . by reason of a violation of this section . . . .")(emphasis added).

　　　We find nothing in the structure or language of the statute to suggest that Congress intended to create a private cause of action against employees whose crime, if you will, merely involved the use of ordinary e-mail in a manner disloyal to their employer and in breach of their employment contract.  The use of e-mail in the context of routine business activity - and for purposes both banal and hurtful - is almost universal and was so when Congress amended the statute.  If such conduct violates the CCFA there would be no principled limit to the kinds of business disputes that Section 1030, and perforce its private right of action, would reach.  We are convinced that if Congress had intended to bring the kind of employment dispute found in this case and so common in state court within the jurisdiction of the federal courts merely because a disloyal employee used e-mail to further his disloyal conduct it would have done so much more

directly and with resounding clarity.[8]

### III.  CONCLUSION

For the foregoing reasons, Autoport's motion to dismiss plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(1) is granted.  We dismiss plaintiffs' complaint without prejudice with leave to amend within 30 days.

An Order will be entered consistent with this Opinion.


                                     s/Noel L. Hillman
                                    NOEL L. HILLMAN, U.S.D.J.
At Camden, New Jersey

---

[8] In reaching this conclusion, we reject the nonetheless comprehensive and thoughtful opinion in <u>Pacific Aerospace & Electronics, Inc. v. Taylor</u>, 295 F. Supp. 2d 1188 (E.D.Wash. 2003).